*In re: Soussis*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2022

(Argued: February 15, 2023    Decided: May 9, 2025)

Docket No. 22-155

IN RE: JULIA F. SOUSSIS, DEBTOR

\*    \*    \*    \*    \*

JULIA F. SOUSSIS,

*Appellant*,

—v.—

MICHAEL J. MACCO, Chapter 13 Trustee, and U.S. TRUSTEE,

*Appellees.*

B e f o r e :

SACK, CARNEY, and BIANCO, *Circuit Judges.*

In this bankruptcy appeal, Debtor-Appellant Julia Soussis challenges the lower courts' determination that the standing trustee in a Chapter 13 bankruptcy proceeding is paid the statutory percentage fee when a case is dismissed before a repayment plan is confirmed by the court.

In the proceedings before the Bankruptcy Court, Soussis filed for Chapter 13 bankruptcy, proposed a repayment plan, and made $362,100 in pre-confirmation payments to the standing trustee administering her case. As required by Section 1326(a)(2) of title 11, the standing trustee "retained" those payments pending Bankruptcy Court approval ("confirmation") of her proposed plan. Before the court held a hearing on whether to confirm the plan and before any debts were discharged, however, Soussis asked the court to dismiss her case. The standing trustee returned most of Soussis's $326,100 in pre-confirmation payments to her, as directed by Section 1326(a)(2), but he kept $20,592 (5.7%) for his percentage fee. The Bankruptcy Court denied Soussis's motion for disgorgement of that sum, and the District Court affirmed. Soussis now appeals.

On *de novo* review, we join the Seventh, Ninth, and Tenth Circuits in holding that a standing trustee cannot keep any percentage fee he collects from the debtor's pre-confirmation payments if no plan is confirmed. Section 1326(a)(2) directs the trustee to return the "payments . . . proposed by the plan." 11 U.S.C. § 1326(a)(1)–(a)(2). Because the percentage fee is collected from—and therefore included in—the payments "proposed by the plan," it too must be returned. Further, in bankruptcies under Chapter 11 (Subchapter V) and Chapter 12, Congress has expressly permitted the standing trustee to deduct his percentage fee before returning pre-confirmation payments to the debtor when a plan is not confirmed. It nevertheless has not enacted language authorizing the same deduction for Chapter 13 plans. Finally, we are not persuaded that a different result is mandated by Section 586(e)(2) of title 28, which provides that the standing trustee "shall collect" his percentage fee from "all payments received" under the Chapter 13 plans he administers. To "collect" the percentage fee could reasonably be understood to mean to "collect and keep it" or to "collect and hold it provisionally"; alternatively, the word "collect" could simply identify the source of a likely eventual payment.

Reading Section 586 in light of Section 1326, however, resolves the ambiguity: the trustee may "collect" the percentage fee from pre-confirmation payments, 28 U.S.C. § 586(e)(2), but he must "retain[]" it before the confirmation hearing, and "return" it if no plan is confirmed, 11 U.S.C. § 1326(a)(2). We conclude that this interpretation best comports with the texts of both statutes and best aligns with the trustee compensation scheme established by Congress.

We therefore REVERSE the judgment of the District Court and REMAND the case for further proceedings consistent with this opinion.

—————

JEFFREY HERZBERG, Jeffrey Herzberg, P.C., Hauppauge, NY, *for Appellant*.

PETER COREY (Michael J. Macco, *pro se, on the brief*), Macco Law Group, LLP, Islandia, NY, *for Appellee Michael J. Macco*.

WENDY COX, Trial Attorney, Executive Office for United States Trustees, Department of Justice, Washington, DC (Ramona D. Elliott, Deputy Director/General Counsel, Executive Office for United States Trustees, Department of Justice, Washington, DC; P. Matthew Sutko, Associate General Counsel, Executive Office for United States Trustees, Department of Justice, Washington, DC; William K. Harrington, United States Trustee for Region 2, Office of the United States Trustee, Department of Justice, Central Islip, NY; Christine H. Black, Assistant United States Trustee, Office of the United States Trustee, Department of Justice, Central Islip, NY; Andrew D. Velez-Rivera, Trial Attorney, Office of the United States Trustee, Department of Justice, Central Islip, NY, *on the brief*) *for Appellee United States Trustee.*

Tara Twomey, National Consumer Bankruptcy Rights Center, San Jose, CA, *for Amici Curiae*, National Consumer Bankruptcy Rights Center and National Association of Consumer Bankruptcy Attorneys, *in support of Appellant*.

Henry E. Hildebrand, III, Chapter 13 Standing Trustee; James M. Davis, Staff Attorney, Nashville, TN, *for Amici Curiae*, National Association of Chapter Thirteen Trustees, *in support of Appellees.*

3

CARNEY, *Circuit Judge*:

In this bankruptcy appeal, Debtor-Appellant Julia Soussis challenges the lower courts' determination that the standing trustee in a Chapter 13 bankruptcy proceeding is paid his statutory percentage fee when a case is dismissed before a repayment plan is approved ("confirmed") by the court.

Two federal statutory provisions are most critical to resolving this appeal: Section 1326 of title 11, which governs a debtor's payments before a plan is confirmed, and Section 586 of title 28, which establishes the compensation scheme for standing trustees. Under Section 1326(a)(1), debtors in Chapter 13 cases must file a proposed plan of repayment and begin making payments to the trustee supervising the case in accordance with that proposed plan. Section 1326(a)(2) instructs the trustee to "retain" the pre-confirmation payments until the confirmation hearing, when the proposed plan is either confirmed or confirmation is denied. If a plan is confirmed, the trustee must then "distribute any such [preconfirmation] payment[s] in accordance with the plan[.]" 11 U.S.C. § 1362(a)(2). If confirmation of the plan is denied, on the other hand, the trustee is required to "return any such [pre-confirmation] payments . . . to the debtor," after deducting administrative expenses that do not include the standing trustee's fee. *Id.* Section 586 directs the Attorney General to fix a percentage fee for standing trustees and provides that the standing trustee "shall collect" that fee "from all payments received . . . under" any Chapter 13 plans administered by the trustee. 28 U.S.C. § 586(e)(2). The percentage in question is applied to each payment that the debtor makes under a Chapter 13 plan.

In the proceedings before the Bankruptcy Court, Soussis filed for Chapter 13 bankruptcy, proposed a repayment plan, and made $362,100 in pre-confirmation

payments to the standing trustee administering her case. As required by Section 1326(a)(2), the standing trustee "retained" those payments pending confirmation of her proposed plan. Before the Bankruptcy Court held a hearing on whether to confirm the plan and before any debts were discharged, however, Soussis asked the court to dismiss her case. The standing trustee returned most of Soussis's $326,100 in pre-confirmation payments to her, as directed by Section 1326(a)(2), but he kept $20,592 (5.7%) for his percentage fee as compensation for services rendered. The Bankruptcy Court denied Soussis's motion for disgorgement of that sum, and the District Court affirmed. Soussis now appeals.

On *de novo* review, we join the Seventh, Ninth, and Tenth Circuits in holding that a standing trustee cannot keep any percentage fee he collects from the debtor's pre-confirmation payments if no plan is confirmed. Section 1326(a)(2) directs the trustee to return the "payments . . . proposed by the plan." 11 U.S.C. § 1326(a)(1)–(a)(2). Because the percentage fee is collected from—and therefore included in—the payments "proposed by the plan," it too must be returned. Further, in bankruptcies under Chapter 11 (Subchapter V) and Chapter 12, Congress has expressly permitted the standing trustee to deduct his percentage fee before returning pre-confirmation payments to the debtor when a plan is not confirmed. It nevertheless has not enacted language authorizing the same deduction for Chapter 13 plans. Finally, we are not persuaded that a different result is mandated by Section 586(e)(2), which provides that the standing trustee "shall collect" his percentage fee from "all payments received" under the Chapter 13 plans he administers. To "collect" the percentage fee could reasonably be understood to mean to "collect and keep it" or to "collect and hold it provisionally"; alternatively, to "collect" from could simply identify the source of a

likely eventual payment. We therefore consider the word "collect" ambiguous as used in Section 586.

Reading Section 586 in light of Section 1326, however, resolves the ambiguity: the trustee may "collect" the percentage fee from pre-confirmation payments, 28 U.S.C. § 586(e)(2), but he must "retain[]" it before the confirmation hearing, and "return" it if no plan is confirmed, 11 U.S.C. § 1326(a)(2). We conclude that this interpretation best comports with the texts of both statutes and best aligns with the trustee compensation scheme established by Congress.

We therefore REVERSE the judgment of the District Court and REMAND the case for further proceedings consistent with this opinion.

**BACKGROUND**

**I.      Statutory background**

A.   Chapter 13: wage-earner bankruptcy

Chapter 13 of the Bankruptcy Code provides many wage-earners an alternative to Chapter 7 bankruptcy proceedings. Both offer a court-supervised route to financial recovery, but Chapter 13 is available only to "individual[s] with regular income" who owe less than a specified amount (currently $526,700 for unsecured debts and $1,580,125 for secured debts).[1] 11 U.S.C. §§ 109(e), 104(a), 101(30); Adjustment of Certain Dollar Amounts Applicable to Bankruptcy Cases, 90 Fed. Reg. 8941 (Feb. 4, 2025). The Chapter 13 framework allows debtors to keep most of their property while in bankruptcy proceedings. 11 U.S.C. §§ 1306(b), 1327(b). Chapter 13 debtors can ultimately secure a

---

[1] When Soussis filed her Chapter 13 bankruptcy case in May 2019, the applicable limits were $419,275 for debts owed to unsecured creditors and $1,257,850 for debts owed to secured creditors. Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 84 Fed. Reg. 3488 (Feb. 12, 2019).

discharge of their debts if they propose and abide by a court-approved plan to use their future income to repay creditors in installments over a three- to five-year period. *Id.* §§ 1321, 1322(a)(1); *see Harris v. Viegelahn*, 575 U.S. 510, 513–14 (2015). Chapter 13 bankruptcy thus provides an attractive option for the debtor who, as a wage-earner, can reasonably commit to making regular payments from her future income.

To initiate a Chapter 13 proceeding, the debtor files a petition and submits sworn statements disclosing her assets, liabilities, income, expenses, and other pertinent information. *See* 11 U.S.C. § 301; Fed. R. Bankr. P. 1007. Key here, within 14 days after filing, the debtor must submit her written proposed plan for repaying all or part of her debts. *See* 11 U.S.C. §§ 1321–22; Fed. R. Bankr. P. 3015(b); *see also* U.S. Courts, Official Form 113: Chapter 13 Plan ("Official Form 113"), https://perma.cc/7JQB-S6S8. After the required materials are submitted, the presiding Bankruptcy Court judge reviews the proposed plan. If the court finds that it meets the statutory requirements, the plan will confirmed and will then bind the debtor and her creditors. *See* 11 U.S.C. §§ 1325, 1327. If the judge does not confirm the plan, he may dismiss the case, convert the case to a proceeding under Chapter 7, or permit the debtor to propose an amended plan. *Id.* §§ 1307(c), 1323(a).

Until 1978, bankruptcy judges handled both the judicial and administrative tasks (including trustee appointment) arising from a given case. *See Siegel v. Fitzgerald*, 596 U.S. 464, 468 (2022). Under the current system, which was piloted in 1978 and later expanded to nearly all parts of the United States in 1986, a trustee is assigned to administer a Chapter 13 plan. *Id.* at 468–69; *see* 28 U.S.C. § 586; 11 U.S.C. § 1302. The Chapter 13 trustee's responsibilities include, *inter alia*, managing the collection of funds and payment of debts in a case—both before and after plan confirmation.

Once the Chapter 13 proceedings are underway and a trustee has been appointed, the debtor retains the authority to modify the proposed plan, including in

response to objections by the trustee or creditors. 11 U.S.C. § 1323(a). The debtor may also convert her case to a Chapter 7 proceeding (requiring the liquidation of most assets) or request that the court dismiss her Chapter 13 proceedings altogether. *Id.* § 1307(a)–(b).

Unless the court orders otherwise, a Chapter 13 debtor must begin making payments to the trustee under the proposed plan within "30 days after the date of the filing of the plan or the order for relief, whichever is earlier[.]" *Id.* § 1326(a)(1). "Order for relief" is a term of art in the Bankruptcy Code: as relevant here, an "order for relief" occurs when a debtor first files a Chapter 13 case or when an earlier case proceeding under another chapter is converted to one under Chapter 13. *Id.* §§ 301(b), 348(a). Thus, Section 1326(a)(1) "effectively requires payments to commence within 30 days after the petition or conversion to [C]hapter 13." 8 Collier on Bankruptcy ¶ 1326.02[1] (16th ed. 2025).

The confirmation hearing must begin no more than 95 days (approximately three months) after the debtor's initial filing of the petition. 11 U.S.C. § 1324(b) ("The hearing on confirmation of the plan may be held . . . not later than 45 days after the date of the meeting of creditors[.]"); Fed. R. Bankr. P. 2003(a)(1)(C) (specifying that a meeting of the creditors must be held "no more than 50 days after the order for relief"); *see also* 8 Collier ¶ 1324.02[2] (noting that Section 1324(b) does not require that the court *complete* the confirmation hearing within any particular timeframe and that, "[i]n any event, there are no apparent consequences if the confirmation hearing is not held by the deadline stated in [S]ection 1324(b)"). When no objection to the plan is filed, the

bankruptcy court must confirm the plan upon a finding that it meets the criteria set forth in Section 1325(a) of title 11.[2]

If a Chapter 13 plan is confirmed, it binds the debtor and her creditors. *See* 11 U.S.C. § 1327(a). Upon confirmation, the trustee must start distributing funds received from the debtor to creditors "as soon as is practicable." *Id.* § 1326(a)(2). And, subject to only limited exceptions, the court will "grant the debtor a discharge of all debts provided for by the plan" after she has made all of the contemplated payments. *Id.* § 1328(a).

The path to discharge under Chapter 13 is not always smooth, however. As the Supreme Court observed in 2015, many debtors "fail to complete a Chapter 13 plan successfully" despite the significant potential benefits of the program. *Harris*, 575 U.S. at 514. A 2017 study found that, of a sample of Chapter 13 cases filed in 2007, only one in three cases ended in discharge: 18.3 percent were dismissed or converted before confirmation, and another 44.2 percent were dismissed or converted after confirmation. *See* Sara S. Greene, Parina Patel, & Katherine Porter, *Cracking the Code: An Empirical Analysis of Consumer Bankruptcy Outcomes*, 101 Minn. L. Rev. 1031, 1043 (2017). According to recently published data, of all Chapter 13 cases closed in 2023, approximately one-half were closed because the debtor completed payments and the debt was discharged; the remaining half were closed for other reasons, including because the debtor failed to make payments. *See* Table BAPCPA 6 – Bankruptcy Abuse

---

[2] These criteria include, among others, that the plan was "proposed in good faith," 11 U.S.C. § 1325(a)(3); that the value of the property to be distributed to unsecured creditors is equal to or greater than the amount that the unsecured creditors would receive in a Chapter 7 bankruptcy proceeding, *id.* § 1325(a)(4); and that the debtor "will be able to make all payments under the plan and to comply with the plan," *id.* § 1325(a)(6).

Prevention and Consumer Protection Act ("BAPCPA") (Dec. 31, 2023), U.S. Courts, https://perma.cc/78RC-2BVN.

It thus appears that, while many prospective Chapter 13 debtors' plans will be confirmed and their creditors will receive some repayment, debtors frequently fall short and are unable to obtain a discharge order.[3]

B.   Appointment and duties of trustees

U.S. Trustees are appointed by the U.S. Attorney General to five-year terms. 28 U.S.C. § 581(b). Each U.S. Trustee is charged with administering the federal bankruptcy system in one of twenty-one defined regions in the United States and its territories. *Id.* § 581(a).

When the number of Chapter 13 cases in a region so warrants, the cognizant U.S. Trustee may appoint and will supervise one or more "standing trustees" to handle those cases. 28 U.S.C. § 586(b); *see* 1 Collier ¶ 6.01[2][c]. If the volume of cases does not warrant appointing a standing trustee, the U.S. Trustee may instead appoint a qualified individual to serve as trustee in each particular Chapter 13 matter (an "ad hoc" Chapter 13 trustee). 11 U.S.C. § 1302(a). The U.S. Trustee himself may also serve as trustee in a Chapter 13 case. *Id.*; 28 U.S.C. § 586(a)(2). "In practice, all or virtually all [C]hapter 13 cases are handled by standing trustees[,]" and ad hoc trustees are appointed only rarely. 8 Collier ¶ 1302.01.

---

[3] "Recognizing that reality," the Supreme Court has explained, Congress gave debtors the "nonwaivable right to convert a Chapter 13 case to one under Chapter 7 'at any time.'" *Harris*, 575 U.S. at 514 (quoting 11 U.S.C. § 1307(a)). In the Chapter 7 personal bankruptcy regime, the debtor must surrender all but a limited set of her assets, but she may shield from creditors her post-petition income. 11 U.S.C. §§ 541(a)(1), 542(a), 522. The Chapter 7 trustee then sells her assets and distributes the proceeds to creditors. *Id.* §§ 704(a)(1), 726.

Chapter 13 trustees (whether standing, ad hoc, or a U.S. Trustee) perform many duties in Chapter 13 cases, including accounting for all property received from the debtor under the plan; investigating the debtor's financial affairs; examining proofs of claims filed by creditors; and objecting to those proofs on behalf of the debtor, if necessary. 11 U.S.C. § 704(a)(2), (a)(4)–(a)(5); *id.* § 1302(b)(1). The trustee must also oppose the debtor's discharge, if he deems opposition advisable, and must appear and be heard at any hearing that concerns confirmation or modification of a plan. *Id.* §§ 704(a)(6), 1302(b)(2). He assists the debtor with performing the plan; coordinates and disposes of the funds received or to be received in the case; and files a final report and accounting of the administration of the bankruptcy estate when it is ready to be closed. *Id.* §§ 704(a)(9), 1302(b)(3)–(4). The trustee may also move to dismiss or convert the case if the debtor fails to make payments or is in material default. 11 U.S.C. § 1307(c).[4] *See generally* Dep't of Justice, Handbook for Chapter 13 Standing Trustees, at pp. 1-2 to 1-3 (effective Oct. 1, 2012), https://perma.cc/D7LC-DA8J (summarizing trustee's responsibilities).

---

[4] If a plan is confirmed but the case is later dismissed or converted, the debtor cannot recover any payments she has made that have previously been distributed to creditors.

If the debtor has made payments under a confirmed plan and the trustee has not yet distributed them, those payments must be returned to the debtor when a case is converted, the Supreme Court has held. *Harris*, 575 U.S. at 518. Many courts have ruled that, if a case is dismissed rather than converted, undistributed payments must also be returned to the debtor. *See* 2 W. Homer Drake, Jr., Paul W. Bonapfel, & Adam M. Goodman, Chapter 13 Practice & Procedure § 20:9 (June 2024 update) (collecting cases); 11 U.S.C. § 349(b)(3) (providing that "[u]nless the court, for cause, orders otherwise, a dismissal of a case . . . revests the property of the estate in the [debtor or other individual or entity] in which such property was vested immediately before the commencement of the case . . . .").

C.  Compensation of standing and ad hoc trustees

Congress has established separate statutory schemes for the compensation of standing trustees and ad hoc trustees.

Standing trustees collect a "percentage fee" from the payments that debtors make in Chapter 11 (Subchapter V), Chapter 12, and Chapter 13 bankruptcy cases. 28 U.S.C. § 586(e)(2).[5] The trustee may collect the percentage fee only from those payments that the trustee receives and distributes, and not from payments that the debtor makes directly to creditors. *Id.; see also* 11 U.S.C. § 1326(c) (creating default rule that the trustee disburses payments under a Chapter 13 plan).

Each fiscal year, the Director of the Executive Office for U.S. Trustees (the "Director") fixes the exact percentage figure—not to exceed ten percent—that is used by each standing trustee to calculate his fee. 28 U.S.C. § 586(e)(1), (e)(1)(B)(i); *see* Handbook for Chapter 13 Standing Trustees at p. 2-3 (noting that the Attorney General has delegated the authority to choose the percentage fee to the Director). The percentage is selected "with a view to generating sufficient funds with which to defray the salary and the actual, necessary expenses of the standing Chapter 13 trustee." 8 Collier ¶ 1302.05[1][a] (citing H.R. Rep. No. 95-595, at 106 (1978)). To that end, standing trustees each individually submit an annual proposed budget that the Director uses to set that

---

[5] The Department of Justice's Handbook for Chapter 13 Standing Trustees instructs trustees that they may "collect the percentage fee upon receipt of [a] payment." Handbook for Chapter 13 Standing Trustees at p. 2-3. On a monthly basis, the standing trustee must transfer the percentage fee to an "operating expense account." *Id.* at p. 4-3. If at the end of the fiscal year the account contains excess fees, that excess is then sent to the U.S. Trustee System Fund, which is used to support the system as a whole.  28 U.S.C. §§ 586(e)(2), 589a. The Handbook does not take a position, however, as to whether the percentage fee must be returned if the case is dismissed or converted before confirmation. *See* Handbook for Chapter 13 Standing Trustees at p. 2-3 (instructing trustees to "reverse payment of the percentage fee that had been collected upon receipt if there is controlling law in the district requiring such reversal").

trustee's percentage fee for the year. *See* Handbook for Chapter 13 Standing Trustees at p. 6-1. Adjustments are possible: if during the fiscal year any trustee discovers that he has overestimated or underestimated his expenses or the payments he will receive for that year, he may ask the Director to amend his budget and increase or decrease the percentage fee that he may collect during the remainder of the year. *See id.* at pp. 6-1 to 6-2; Chapter 13 Practice & Procedure § 17:5; 28 C.F.R. § 58.11(a)(1), (c)(2).

The standing trustee's "actual compensation"—the total amount he collects in fees in a fiscal year for all cases he administers minus reasonable expenses[6]— is subject to two limits. First, actual compensation cannot exceed five percent of "all payments [the trustee] received under [the] plans" that he administers. 28 U.S.C. § 586(e)(2)(A). Second, it cannot exceed the sum of (1) the "highest annual rate of basic pay in effect for level V of the Executive Schedule," plus (2) the cash value of the employment benefits received by government employees for that base pay level. *Id.* § 586(e)(1)(A); *see* Salary Table No. 2025-EX, Rates of Basic Pay for the Executive Schedule (EX), Off. of Pers. Mgmt (effective Jan. 2025), https://perma.cc/M5SC-FBM5. At the end of the fiscal year, if his "actual compensation" exceeds either of these caps, he must deposit the excess in the U.S. Trustee System Fund, 28 U.S.C. § 586(e)(2)(A)–(e)(2)(B), which covers certain operational expenses for the trustee system, *id.* § 589a. *See* note 5, *supra*.

In fiscal years 2023 and 2024, almost all Chapter 13 standing trustees received actual compensation at a level at or very near the year's statutory maximum ($253,705 and $269,444, respectively). *See* U.S. Dep't of Just., Chapter 13 Trustee Data and

---

[6] Each fiscal year, the standing trustee must submit a list of anticipated expenses, which must be "reasonable, actual, necessary, relate[d] to the duties of the standing trustee[,] and . . . supported by appropriate documentation." Handbook for Chapter 13 Standing Trustees at p. 6-2. The U.S. Trustee may deny reimbursement for expenses that are not adequately justified. *See* 28 C.F.R. § 58.11(b).

Statistics, available at https://www.justice.gov/ust/private-trustee-data-statistics/ chapter-13-trustee-data-and-statistics (last visited Apr. 24, 2025). Accounting for expenses, the trustees deposited $0 in the U.S. Trustee System Fund each year. *Id.* As this data reflects, "standing trustees rarely collect excess funds" because the U.S. Trustee for the region "monitor[s] each standing trustee's income and expenses closely throughout the fiscal year," and "[i]f excess funds are projected, the percentage fee is adjusted downward." 1 Collier ¶ 6.15[5]. This system ensures that the standing trustee receives adequate, but not excessive, compensation and that his administrative costs are covered.

Because compensation of a standing trustee is based on a percentage of payments received, 28 U.S.C. § 586(e), the total amount he receives in each case depends on the amount of the debt at issue in that case. It is calculated and paid without regard to the amount of time or effort expended on that case. Thus, if the debtor makes large monthly payments, the trustee will collect a sizable fee whether he spends much or little time in administering that debtor's plan.

For an ad hoc trustee appointed to a single case under 11 U.S.C. § 1302, in contrast, the fee is based at least in part on the extent of the trustee's efforts in that particular case. Thus, for such a trustee, the bankruptcy court may award a fee that includes "reasonable compensation" for "actual, necessary" services rendered, plus reimbursement for expenses incurred. 11 U.S.C. §§ 330(a)(1)(A)–(a)(1)(B), 326(b). When determining the compensation award, the court must consider "the nature, the extent, and the value of [the trustee's] services," weighing factors such as the time the ad hoc trustee spent on the case and the trustee's qualifications. *Id.* § 330(a)(3). Compensation for the ad hoc trustee's services cannot exceed "five percent [of] all payments under the plan." *Id.* § 326(b). The ad hoc trustee's fee is considered an "administrative expense"

14

under Section 503(b) and accordingly merits "priority" payment. *Id.* §§ 503(b)(2), 507(a)(2).

Both the standing trustee's percentage fee and the ad hoc trustee's fee (along with other Section 503(b) administrative expenses) are to be paid "[b]efore or at the time of each payment to creditors under the plan." *Id.* § 1326(b); *see id.* §§ 507(a)(2), 503(b)(2). Each fee is also subject to the same statutory minimum: "[u]nless the court orders otherwise," the trustee's compensation in a Chapter 13 case cannot be "less than $5 per month from any distribution under the plan during the administration of the plan." *Id.* § 330(c).

## II. Factual and Procedural Background

The underlying facts are not disputed. They are as follows.

### A. The Bankruptcy Court proceedings

In May 2007, JPMorgan Chase Bank, N.A. (the "Bank") sued Debtor-Appellant Julia Soussis in New York State court, seeking to foreclose on a mortgage encumbering Soussis's residence in Garden City, New York. *See JPMorgan Chase Bank, N.A. v. Soussis*, 165 A.D. 3d 1240, 1240–41 (2d Dep't 2018). By November 2008, Soussis had not answered the complaint, and in light of that failure, the state court entered a default judgment in favor of the Bank and authorized the foreclosure sale of Soussis's residence. *Id.* at 1241.

On February 23, 2009, one day before the scheduled foreclosure sale, Soussis filed her first petition for Chapter 13 bankruptcy. When a debtor files for bankruptcy, bankruptcy law generally stays all judicial or administrative actions against her, including state foreclosure actions. *See* 11 U.S.C. § 362(a). Accordingly, the foreclosure sale was cancelled.

15

Over the next decade, Soussis repeatedly forestalled the sale of her home by bringing multiple (and ultimately unsuccessful) challenges to the state court judgment and also by filing successive Chapter 13 bankruptcy petitions. She filed five bankruptcy petitions between 2009 and 2015, each of which was dismissed—upon a motion from the standing trustee—within three to six months after her filing and before any Chapter 13 plan was confirmed.[7]

In May 2019, Soussis again petitioned the Bankruptcy Court for relief under Chapter 13. By then, Soussis had made no mortgage payments at all for over twelve years. She was $454,797.33 in arrears on her mortgage. The May 2019 petition was her sixth petition since entry of the 2008 state court default judgment mentioned above.

In June 2019, Soussis submitted her proposed Chapter 13 plan (the "First Plan") related to her May 2019 filing. The First Plan provided that, beginning on June 20, 2019, she would pay the Bank $1,000 per month. She would continue those payments for 60 months, and, on or before September 20, 2019, she would make a lump sum payment of $380,000 to the Bank on the mortgage debt.

The company servicing the mortgage for the Bank objected to the First Plan, asserting that the scheduled payments would not cover the actual mortgage arrearages.[8] In response, in September 2019, Soussis proposed an amended plan (the "Second Plan"):  she would pay the Bank $1,000 per month for each of the three months from

---

[7] In these cases, Soussis either did not make pre-confirmation payments or paid only small amounts to the trustee before the case was dismissed upon a motion from the trustee. In two cases, the standing trustee retained a modest fee ($51 and $190, respectively), and Soussis did not seek disgorgement.

[8] The standing trustee supervising Soussis's case also moved to dismiss the case, accusing Soussis of failing to provide him with the financial documents that she was required by statute to produce. The motion was never decided: as discussed below, Soussis moved to dismiss her own case before the Court heard the standing trustee's motion.

June 20, 2019, to September 20, 2019; she would then pay $2,900 per month for 56 months; and then, on or before November 29, 2019, she would make a lump sum payment to the Bank of $340,000, covering the remaining arrearages.

A confirmation hearing on the Second Plan was scheduled for August 8, 2019. It did not occur: Soussis postponed that hearing date. She also postponed the other hearing dates set by the court for late 2019 (September 26, December 5, December 19), and for early 2020 (January 9, January 23, April 16, and June 11). And then, on June 29, 2020—over one year after her initial filing in May 2019, with the Second Plan still yet to be heard by the court—Soussis moved to dismiss her Chapter 13 petition altogether.[9] The Bankruptcy Court granted her motion on June 30, 2020.[10]

B. <u>Standing Trustee Macco's fee-related proceedings</u>

Michael Macco, a standing trustee in the Eastern District of New York and one of the two appellees here, was appointed to handle Soussis's 2019 bankruptcy case. William K. Harrington, the U.S. Trustee for Region 2 (New York, Connecticut, and Vermont), was responsible for supervising Macco's performance of his duties. *See* 28 U.S.C. § 586(b). U.S. Trustee Harrington appeared in the bankruptcy proceedings and the District Court appeal, and he is also an appellee here. In our discussion below, we

---

[9] The Bankruptcy Court surmised that Soussis likely "sought to dismiss her case because of a change made to the New York Real Property Actions and Proceedings Law, effective December 23, 2019, which permits a defendant to raise the defense of lack of standing after a judgment of foreclosure has been entered." *In re Soussis*, 624 B.R. 559, 565 (Bankr. E.D.N.Y. 2020).

[10] Since that dismissal, Soussis has filed two additional Chapter 13 bankruptcy petitions, both of which were dismissed before confirmation upon a motion by the standing trustee. January 19, 2024, Soussis's property was finally sold at a foreclosure auction, at which a subsidiary of the Bank submitted the winning bid. At that time, Soussis's arrearage on her mortgage totaled $786,116.75, and she owed an additional $261,968.40 in taxes, assessments, insurance, and property preservation costs. Her property is currently listed for sale online for $879,800.

refer to Standing Trustee Macco and U.S. Trustee Harrington collectively as the "Trustees."

Section 1326(a)(1) of title 11 required Soussis to "commence making payments . . . in the amount . . . proposed by the plan to the trustee" within 30 days after she filed for bankruptcy. Macco, as the standing trustee in her case, would then "retain[]" those payments "until confirmation or denial of confirmation." 11 U.S.C. § 1326(a)(2). If a plan had been confirmed, Macco would have then "distribute[d]" those payments to creditors "in accordance with the plan as soon as [was] practicable." *Id.* But since no plan was confirmed, he distributed no payments to creditors and was instead obligated to "return any such payments . . . to [Soussis]." *Id.*

After the June 30 dismissal, Macco prepared and filed his final report of receipts and disbursements. In his report, Macco averred that over the approximately 13 months after filing the Second Plan, Soussis made $362,100 in pre-confirmation payments. Macco further reported that, after the case was dismissed, he took $20,592 for his percentage fee, representing approximately 5.7% of the $362,100 paid in by Soussis. He returned the remaining $341,508 to her.

Soussis objected to his retention of the percentage fee and sought an order requiring Macco to disgorge the $20,592 that he had kept.[11] She contended that Section 1326(a)(2) of title 11 requires a Chapter 13 standing trustee to collect and to hold his percentage fee, but only provisionally, until a plan is confirmed. Absent plan confirmation, she asserted, the Chapter 13 standing trustee must refund the fee to the debtor upon dismissal of the case, just as he must return to the debtor the amounts

---

[11] The Bankruptcy Court concluded that a motion for disgorgement is not the proper vehicle to challenge a standing trustee's percentage fee: Soussis should instead have objected to Macco's final report. *See* App'x at 18; Fed. R. Bankr. P. 5009. But the court elected to overlook the procedural defect and analyze the matter as if Soussis had followed the appropriate procedures.

collected and held on behalf of creditors.[12] The Trustees took the opposite position, arguing that because 28 U.S.C. § 586(e)(2) directs the standing trustee to "collect" the fee out of all "payments made under the plan," the standing trustee is entitled to keep the fee, whether or not the plan is confirmed. They urged that Section 1326(a)(2) exempts the percentage fee from the obligation to return the collected amount to the debtor.

The Bankruptcy Court denied Soussis's motion, adopting the Trustees' reasoning: it concluded that, by directing the standing trustee to "collect" the percentage fee, Section 586(e)(2) means that "[t]he percentage fee is the Trustee's to keep, regardless of whether the debtor's plan is confirmed." *In re Soussis*, 624 B.R. 559, 564 (Bankr. E.D.N.Y. 2020). On appeal to the District Court, the district judge acknowledged that "some courts have interpreted the relevant statutes to reach a contrary conclusion," but in the end, it adopted the Bankruptcy Court's analysis and affirmed its ruling. *Soussis v. Macco*, No. 20-cv-05673, 2022 WL 203751, at *2 (E.D.N.Y. Jan. 24, 2022).

Soussis timely sought this Court's review.

---

[12] In the Bankruptcy Court proceedings, Soussis also maintained in the alternative that Macco's fee was too high: she asked the Bankruptcy Court to set a "fair and reasonable fee" and direct Macco to return the rest. Special App'x at 23. During her subsequent appeal to the District Court, however, Soussis expressly abandoned the argument, and we therefore do not address it further on appeal. *See Soussis v. Macco*, No. 20-cv-05673, 2022 WL 203751, at *1 n.1 (E.D.N.Y. Jan. 24, 2022). In any event, the requirement that a trustee's fee be "reasonable," 11 U.S.C. § 330(a)(1), does not apply to the standing trustee's percentage fee. *See id* § 326(b) (providing that standing trustee's percentage fee is not subject to Section 330); 28 U.S.C. § 586(e)(2) (explaining how the standing trustee's percentage fee is calculated).

Separately, Soussis contended that Macco breached his fiduciary duty to her when he collected his percentage fees from the pre-confirmation payments, and she asserted a claim against him under the Federal Tort Claims Act, seeking to recover her attorney's fees as damages. *See In re Soussis*, 624 B.R. at 564; *Soussis*, 2022 WL 203751, at *2. Because she does not brief this issue on appeal, we treat it too as abandoned. *See McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005).

## DISCUSSION

Because this case "turns on questions of statutory interpretation," we review the District Court's ruling *de novo*. *In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001). We start, as always, by examining the text of the relevant statutory provisions to discern their plain meaning. Plain meaning is informed by, but does not depend solely on, dictionary definitions. *See United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). Rather, to ascertain a text's plain meaning, we draw on "the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (internal quotation marks omitted). If the statutory text is unclear, we may also "consult the legislative history to discern 'the legislative purpose as revealed by the history of the statute.'" *United States v. DiCristina*, 726 F.3d 92, 96–97 (2d Cir. 2013) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 627 (1993)).

Here, we conclude that the text, legislative history, and statutory purpose are aligned: each supports the view that standing trustees may not keep a percentage of the debtor's pre-confirmation payments as a fee if no plan is confirmed. We therefore join the Seventh, Ninth, and Tenth Circuits in holding that, under such circumstances, the standing trustee must return any percentage fee that he has collected. *See Marshall v. Johnson*, 100 F.4th 914 (7th Cir. 2024); *Matter of Evans*, 69 F.4th 1101 (9th Cir. 2023), *cert. denied sub nom. McCallister v. Evans*, 144 S. Ct. 1004 (2024); *In re Doll*, 57 F.4th 1129 (10th Cir. 2023), *cert. denied sub nom. Goodman v. Doll*, 144 S. Ct. 1001 (2024).

**I.** **Section 1326 and Section 586 are properly interpreted together and require the standing trustee to return the percentage fee to the debtor if no plan is confirmed.**

The parties agree that two statutory provisions bearing on Chapter 13 bankruptcy proceedings are central to resolving this dispute: Section 586 of title 28[13] and Section 1326 of title 11.[14] As we have explained, Section 586 directs the standing trustee

---

[13] Section 586 provides in relevant part:

> [The standing trustee] shall collect such percentage fee from all payments received by such individual under plans in the cases under subchapter V of chapter 11 or chapter 12 or 13 of title 11 for which such individual serves as standing trustee.

28 U.S.C. § 586(e)(2).

[14] Section 1326 provides in relevant part:

> (a) (1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount--
>
> (A) proposed by the plan to the trustee;
>
> . . . .
>
> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).
>
> . . . .
>
> (b) Before or at the time of each payment to creditors under the plan, there shall be paid--
>
> (1) any unpaid claim of the kind specified in section 507(a)(2) of this title;

to "collect" his percentage fee "from all payments received by [the trustee] under [Chapter 13] plans" that the trustee administers. Section 1326(a)(1) requires Chapter 13 debtors to make pre-confirmation payments to the trustee in an amount "proposed by the [debtor's] plan[.]" The trustee must then "retain[]" those payments pending "confirmation or denial of confirmation" and "return" the payments if no plan is confirmed. 11 U.S.C. § 1326(a)(2).

We thus ask: Is the percentage fee established by Section 586 a part of the "payments . . . proposed by the plan" that, under Section 1326(a)(2), the trustee must return to the debtor when a plan is not confirmed? Or rather, is it not so that the trustee may deduct and keep his percentage fee before returning the payments? Reading Section 586 and Section 1326 in tandem, we hold that the trustee's percentage fee is included in the payments proposed and made that the standing trustee must return to the debtor. He may not deduct and keep it.

A. The word "payments" in Section 1326(a) covers all of the debtor's obligations, including the trustee's fee.

We start by looking to the plain text of these statutes to determine whether the phrase "payments . . . proposed by the plan," 11 U.S.C. § 1326(a)(1), includes the standing trustee's percentage fee. We conclude that it does. Under Section 586(e)(2), the standing trustee "shall collect [his] percentage fee from all payments received by [the trustee]" under Chapter 13 plans that the trustee administers. 28 U.S.C. § 586(e)(2). That is, the percentage fee is taken from—and thus is part of—the "payments . . . proposed

---

(2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28 . . . .

11 U.S.C. § 1326(a)-(b).

by the plan[.]" 11 U.S.C. § 1326(a)(1). Read together with Section 586(e)(2), then, Section 1326(a)(2) requires that the percentage be returned to the debtor when a plan is not confirmed.

The text of Section 1326(b) confirms this interpretation. It provides that the percentage fee "shall be paid" "[b]efore or at the time of each payment to creditors under the plan[.]" *Id.* § 1326(b). The trustee distributes payments to creditors under the plan only after the plan has been confirmed (otherwise, the payments must be "return[ed]" to the debtor).[15] *Id.* § 1326(a)(2). Thus, "[b]ecause the trustee will never pay creditors if no plan is confirmed, and [Section] 1326(b) provides for payment of trustee fees *before* or [at] the time the trustee pays creditors, it follows that, if confirmation never happens, [Section] 1326(b) does not contemplate payment of the trustee's percentage fee." *In re Acevedo*, 497 B.R. 112, 121 (Bankr. D.N.M. 2013); *see In re Doll*, 57 F.4th at 1145 (same).[16]

A review of relevant Chapter 13 procedures confirms that, in practice, the payments a debtor proposes in her plan include the trustee's percentage fee, as well as the outstanding arrearages. The standard form that a debtor must use to submit her proposed Chapter 13 plan asks her to estimate the percentage of her payments that will

---

[15] In other circumstances, as discussed below, a debtor must make payments "directly to" creditors before confirmation. 11 U.S.C. § 1326(a)(1)(B)–(C). Those circumstances are not present here.

[16] This reading is also consistent with Section 330(c) of title 11, regarding trustee compensation. It reads: "Unless the court orders otherwise, in a case under [C]hapter . . . 13 of this title the compensation paid to the trustee serving in the case shall not be less than $5 per month from any distribution under the plan during the administration of the plan." 11 U.S.C. § 330(c). That Congress tied the $5 minimum to each "distribution under the plan" demonstrates its expectation that trustees would collect their fees from distributions to creditors. Indeed, Section 330(c) was added to title 11 by the same bill that added Section 1326(a). *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 434(c), 98 Stat. 333, 370.

cover the percentage fee. *See* Official Form 113 at 5 ("Trustee's fees are governed by statute and may change during the course of the case but are estimated to be ___% of plan payments; and during the plan term, they are estimated to total $___.")[17] An exhibit to the form instructs the debtor to calculate the total payments she will make to the trustee by adding up all of the line-items listed in the plan, including the trustee's percentage fee. *Id*. at 9. To repay the total amount, the debtor's plan "ordinarily proposes monthly lump sum payments to the trustee" over a three- or five- year period. *In re Acevedo*, 497 B.R. at 119; *see* E.D.N.Y. Chapter 13 Model Plan § 2.1 ("Debtor(s) shall pay to the Trustee for a period of months as follows: . . . ."). Debtors need not separately pay the percentage fee, because the trustee is expected to collect the percentage fee from the payments disbursed under the plan.[18] *In re Dickens*, 513 B.R. 906, 913 (Bankr. E.D. Ark. 2014) (describing testimony from Trustee's Office case operations administrator that the percentage fee is "part and parcel of the monthly payments made to the Trustee" and is "included in the monthly lump sum payment written down in the blank space provided for in the model plan used by debtors").

---

[17] The Federal Rules of Bankruptcy Procedure require debtors to use Official Form 113 "unless the court has adopted a local form[.]" Fed. R. Bankr. P. 3015(c)(1); *see also* U.S. Courts, Official Form 113 Committee Note (Dec. 1, 2017), https://perma.cc/T64S-5J9M ("Official Form 113 is new and is the required plan form in all chapter 13 cases, except to the extent that Rule 3015(c) permits the use of a Local Form."). Many districts have adopted local forms and these generally follow the same structure as that used by the Official Form 113. The Eastern District of New York's local form, like Official Form 113, lists the percentage fee among other "fees and priority claims," such as attorney's fees, that are covered by plan payments. *See* E.D.N.Y. Chapter 13 Model Plan § 4.2. (effective Dec. 1, 2024), https://perma.cc/L7BL-3RY2. It does not ask the debtor to specify in the form the amount that will be required for the percentage fee. *Id.*

[18] The amount of the percentage fee is likewise determined by the proposed plan, because the fee is a set percentage of the payments the trustee receives and disburses to creditors on the debtor's behalf. 28 U.S.C. § 586(e)(1)–(2). If the debtor proposes larger payments to the trustee, the trustee collects a larger fee.

Moreover, when the debtor's proposed plan does not provide enough funds to cover all of the debtor's obligations including the percentage fee, the standing trustee or a creditor may object to its confirmation. *Id.* In Soussis's case, for instance, a creditor objected to the First Plan on grounds that the proposed payments were "not sufficient to satisfy the actual arrears and to pay the Chapter 13 trustee required commissions and any other distributions or payments that may be required in the case." Objection to Confirmation of Plan ¶ 4, *In re Soussis*, No. 8-19-73686-reg (Bankr. E.D.N.Y.) (ECF No. 14). Soussis then filed the Second Plan, increasing the proposed monthly payments.

In sum, in the Chapter 13 context, the term "payments . . . proposed by the plan," 11 U.S.C. § 1326(a)(1), means the debtor's entire schedule of monthly lump sum payments. This aggregation includes an unspecified amount for the percentage fee. Accordingly, the percentage fee—like the amounts allocated to any other line-items in the plan—must be returned to the debtor if no plan is confirmed.

B. <u>Section 1326(a)(2) does not permit the standing trustee to deduct his percentage fee before he returns payments to the debtor.</u>

To determine whether the percentage fee is part of the payments that must be returned under Section 1326(a)(2), we look not only to the amounts that the subsection directs the standing trustee to return when a plan is not confirmed ("payments . . . proposed by the plan"), but also to the exceptions to its return rule.

Congress created two express exceptions in Section 1326(a)(2), as follows: "[i]f a plan is not confirmed, the trustee shall return any [pre-confirmation] payments *not previously paid and not yet due and owing to creditors pursuant to paragraph (3)* to the debtor, after deducting *any unpaid claim allowed under [S]ection 503(b)*." 11 U.S.C. § 1326(a)(2) (emphases added). Thus, the trustee may exclude from the payments returned: (1) amounts "previously paid" or "due and owing" to creditors under Section

25

1326(a)(3); and (2) amounts for administrative expenses "allowed under [S]ection 503(b)." *Id.*

As explained below, neither of these exceptions includes the percentage fee. Since Congress has expressly enumerated exceptions that do not include the percentage fee, we can reasonably infer absent express language to the contrary that no percentage fee exception exists.

> 1. *The percentage fee does not fit within Section 1326(a)(2)'s listed exceptions to the return obligation.*

**Amounts "previously paid" or "due and owing" to creditors.** First, the percentage fee is not an amount "previously paid and . . . due and owing to creditors pursuant to paragraph (3)." *Id.* The referenced "paragraph (3)"—11 U.S.C. § 1326(a)(3), that is—allows the Bankruptcy Court to "modify, increase, or reduce" the pre-confirmation payments obligations "pending confirmation of a plan."[19] Here, the Bankruptcy Court did not enter any order altering Soussis's proposed pre-confirmation payment obligations.

In addition, this exception applies to only amounts "previously paid" or "due and owing" to "*creditors.*" *Id.* § 1326(a)(2) (emphasis added). As we have explained, before a plan is confirmed, the trustee does not distribute any payments under the plan to creditors. *Id.* So payments "previously paid" or "due and owing" must refer to two types of payments that debtors are obligated to make "directly to" creditors in the pre-confirmation period: payments on current personal property leases, *id.* § 1326(a)(1)(B), and "adequate protection" payments to certain secured creditors, *id.* § 1326(a)(1)(C).

---

[19] Paragraph (3) reads: "Subject to [S]ection 363, the court may, upon notice and a hearing, modify, increase, or reduce the payments required under [Section 1326(a)] pending confirmation of a plan." 11 U.S.C. § 1326(a)(3).

Indeed, Congress added this requirement that debtors make direct-to-creditor payments before confirmation in a 2005 amendment to Section 1326(a), which also inserted the phrase "not previously paid and not yet due and owing to creditors" into Section 1326(a)(2). *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 309(c)(2), 119 Stat. 23, 83. Soussis herself was not required to make and did not make any such pre-confirmation lease or adequate protection payments.[20] Moreover, the trustee's fee is not paid or owed to *creditors*: it goes directly to the trustee. Therefore, the stated exception for amounts "previously paid" or "due and owing" to creditors does not include the trustee's percentage fee.

The Trustees insist that the percentage fee is an amount "previously paid," reasoning that the fee is collected by the trustee as soon as each pre-confirmation payment is received. Their interpretation ignores the last portion of the statutory clause. The full clause states that the amounts must be previously paid "*to creditors pursuant to paragraph (3)*[.]" 11 U.S.C. § 1326(a)(2) (emphasis added). As the Tenth Circuit observed, the Trustees' reading would effectively split the clause into two parts, so that it directs the trustee to return pre-confirmation payments that are "[1] not previously paid and [2] not yet due and owing to creditors pursuant to paragraph (3).'" *In re Doll*, 57 F.4th at 1141 n.8.

This is not a viable construction. We see no reason to think that Congress intended to cleave the text in this awkward way. The Trustees do not explain why the amounts "due and owing"—and not the amounts "previously paid"—would go "to creditors pursuant to paragraph (3)[.]" 11 U.S.C. § 1326(a)(2). The more natural reading

---

[20] Even if she had made such payments, they would be made "directly to" creditors, 11 U.S.C. § 1326(a)(1)(B)–(C), and might not be subject to the percentage fee at all, *see* 28 U.S.C. § 586(e)(2) (permitting the trustee to collect his percentage fee only from "payments received by [the trustee]").

27

is that the phrase "previously paid and . . . due and owing" merely refers to different moments in the payment process: the "payments . . . to creditors" might be already paid, or they might have been collected by the trustee, but not yet paid (and thus remain "due and owing"). *Id.* We therefore conclude that Section 1326(a)(2) excepts only those amounts "previously paid . . . *to creditors* pursuant to paragraph (3)," not all amounts "previously paid." *Id*. (emphasis added). [21]

The legislative history of this section further undermines the Trustees' view and leaves little doubt that Congress intended to refer only to those "previously paid" amounts that went "to creditors pursuant to paragraph (3*)*[.]*" Id.* In an early draft of the bill that became this law, the relevant subsection directed the trustee to return any "payments *not previously paid to creditors* pursuant to paragraph (3)[.]" S. 625, 106th Cong. § 309(c)(2) (1999) (emphasis added). The phrase "not yet due and owing" was inserted by a 1999 amendment to the bill. S. Amdt. 1723, 145 Cong. Rec. S11151 (daily edition Sept. 21, 1999); s*ee* Robin Jeweler, Cong. Rsch. Serv. RS20433, S. 625, The Bankruptcy Reform Act in the Senate: Selected Amendments 6 (Jan. 28, 2000) (explaining that, with the amendment, "[i]f a debtor makes payments into a [C]hapter

---

[21] To determine whether a "modifier at the beginning or end of a series of terms modifies all the terms[,]" courts have applied two contradictory rules: the "last antecedent rule" and the "series qualifier canon[.]" *United States v. Lockhart*, 749 F.3d 148, 152 (2d Cir. 2014), *aff'd*, 577 U.S. 347 (2016). The "last antecedent rule" posits that "a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Id.* (internal quotation marks omitted). The "series qualifier canon," on the other hand, sets the opposite rule: "a modifier at the beginning or end of a series of terms modifies all the terms." *Id.* (internal quotation marks omitted). The series qualifier canon generally prevails when, as is true here, "there is 'no reason consistent with any discernible purpose of the statute to apply' the limiting phrase to the last antecedent alone.'" *United States v. Loyd*, 886 F.3d 686, 688 (8th Cir. 2018) (quoting *United States v. Bass*, 404 U.S. 336, 341 (1971)). It has particular force if the statute includes "nouns or verbs in a series," *Corsair Special Situations Fund, L.P. v. Pesiri*, 863 F.3d 176, 189 n.2 (2d Cir. 2017) (Leval, *J.,* concurring) (internal quotation marks omitted), such as "previously paid" and "due and owing."

13 plan that is not confirmed, the trustee must return to the debtor payments *not previously paid to creditors 'and not yet due and owing'*" (emphasis added)). This history persuades us all the more that Congress intended the phrase "previously paid" to be modified by the phrase "to creditors pursuant to paragraph (3)." And, as earlier explained, the percentage fee collected here meets none of the requirements set forth in the clause: it has not been modified by court order under paragraph (3), and it is not paid or owed to creditors. [22]

---

[22] The exception for amounts "previously paid . . . [or] due and owing to creditors pursuant to paragraph (3)" would, if read literally, apply in very few cases. One leading treatise suggests that trustees may withhold repayment under this provision only if a "specific order modifying payments to those creditors has previously been entered by the court [under paragraph (3)] and the trustee has not made any payments the trustee was ordered to make." 8 Collier ¶ 1326.02[2][c][i]. We need not decide the precise contours of the exception here because we do not think the clause covers the percentage fee under any reasonable interpretation.

We note for completeness, however, that the final text of the clause—particularly the confusing reference to paragraph (3)—may simply be an unintended result of a complex legislative process. As discussed, the phrase "not previously paid and not yet due and owing to creditors pursuant to paragraph (3)" was added to Section 1326(a)(2) in the 2005 bankruptcy reform legislation. Before its enactment, Senator Chuck Grassley introduced several versions of the same bill over a multi-year period. In the 1999 version that he introduced, the relevant section read:

> (2) A payment made [in the pre-confirmation period] shall be retained by the trustee until confirmation, denial of confirmation, or paid by the trustee as adequate protection payments in accordance with paragraph (3) . . . . If a plan is not confirmed, the trustee shall return any such payments not previously paid to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

> (3)      (A) As soon as is practicable, and not later than 40 days after the filing of the case, the trustee shall—
>              (i) pay from payments made under this section the adequate protection payments proposed in the plan;
>              . . . .

*Administrative expenses.* Section 1326(a)(2) also allows the trustee to "deduct[] any unpaid claim for [administrative expenses] allowed under [S]ection 503(b)" from the payments he returns to the debtor. 11 U.S.C. §§ 1326(a)(2), 503(b). However, the percentage fee is not, the parties agree, the type of "administrative expense" that is covered by Section 503(b). Section 503(b) of title 11 covers the fee for the debtor's attorney, *id.* §§ 503(b)(2), 330(a)(4)(B), and for the ad hoc trustee, *id.* §§ 503(b)(2), 330(a)(1), 326(b), 1302, among other fees and expenses. But it does not cover the standing trustee's fee. *Id.* § 326(b) (providing that the Bankruptcy Court "may not allow compensation for services or reimbursement of expenses of . . . a standing trustee" under Section 330, and by extension under Section 503(b)).

> 2. *Congress's choice to include express exceptions to the return rule suggests that other exceptions—such as for the trustee's percentage fee—should not be inferred.*

As described, Congress expressly identified two exceptions to the general rule that pre-confirmation payments must be returned to the debtor if no plan is confirmed.

---

> (B) The court may, upon notice and a hearing, modify, increase, or reduce the payments required under this paragraph pending confirmation of a plan.

S. 625, 106th Cong. § 309(c)(2) (1999). In that bill, the phrase "payments previously paid to creditors pursuant to paragraph (3)" unmistakably referred only to pre-confirmation adequate protection payments.

The next year, for reasons that are not apparent, much of paragraph (3) was relocated to paragraph (1), and the bill's language was also revised to provide that adequate protection payments should go directly to creditors, rather than to the trustee. S. 3186, 106th Cong. § 309(c)(2) (2000). This revision left in paragraph (3) only the current provision, which allows the bankruptcy court to modify the pre-confirmation payments. *Id.*; *see* 11 U.S.C. § 1326(a)(3). Nevertheless, when Congress made this change to paragraph (3), it did not revise the previous paragraph's reference to paragraph (3). This may have reflected a deliberate choice by Congress to narrow the meaning of the phrase "previously paid . . . to creditors pursuant to paragraph (3)," but it also may have reflected simply an oversight in amendment process. Either way, it does not affect our conclusion here.

The Supreme Court has explained that, "[w]here Congress explicitly enumerates certain exceptions to a general [rule], additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980); *see Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 625 (2d Cir. 2008) (referring to "canon that expressing one item of a commonly associated group or series excludes another left unmentioned"). That Congress did not include the percentage fee among Section 1326(a)(2)'s exceptions, then, creates a strong basis for concluding that no such exception can be inferred and that the percentage fee, too, must be returned.

We find additional evidence for this view in Congress's directive that administrative costs be "deduct[ed]" from the pre-confirmation payments that are to be returned to debtors when a case is dismissed. 11 U.S.C. § 1326(a)(2). The use of "deduct" in Section 1326(a)(2) suggests that those administrative costs would—but for the deduction—be included in the "payments . . . proposed by the plan" that must be "return[ed]" to the debtor. *Id.* § 1326(a)(1)–(a)(2). And if those "payments" include administrative expenses, we cannot see how they could exclude the standing trustee's percentage fee. After all, the statute directs that the administrative expenses and the standing trustee's fee be paid at the same time: "[b]efore or at the time of each payment to creditors under the plan." *Id.* § 1326(b). And administrative expenses and the percentage fee often go hand-in-hand in bankruptcy proceedings. *See* Official Form 113 at 5 (listing trustee's fee alongside "fees and priority claims," including Section 503(b) administrative expenses); Chapter 13 Practice & Procedure § 6:7 (explaining that "[a]lthough the standing Chapter 13 trustee's fees are not technically an administrative expense claim because they are not paid under the authority of Code § 503(b), they are often loosely referred to as such"). Therefore, the "payments" that must be "retained" before confirmation include both Section 503(b) administrative expenses and quasi-administrative expenses like the percentage fee. 11 U.S.C. § 1326(a)(2). When those

31

payments are returned to debtors, Congress has expressly allowed the deduction of the Section 503(b) administrative expenses, but not the percentage fee. *Id.*

The Bankruptcy Court's interpretation of Section 1326(a)(2) would turn the express allowance of an administrative-expenses deduction into mere surplusage. In that court's view, the only payments that must be returned under Section 1326(a)(2) are "funds earmarked for creditors." *In re Soussis*, 624 B.R. at 573. But if so, then those "payments" would not include Section 503(b) administrative expenses either, since administrative expenses are generally not "earmarked for creditors."[23] The clause providing for administrative expenses to be deducted would therefore be largely superfluous, a result we hesitate to accept. *See Sec. & Exch. Comm'n v. Govil*, 86 F.4th 89, 100–01 (2d Cir. 2023).

For all these reasons, we think that the payments in "the amount . . . proposed by the plan" in Section 1326(a)(2) refers to the entire sum of the pre-confirmation payment, including the amounts intended to cover the trustee's percentage fees. Under Section 1326(a)(2), the trustee must "retain[]" those payments and, if no plan is confirmed, "return [them] . . . to the debtor," deducting only those amounts specifically exempted by the statute. *Id.* Because the statute does not authorize the trustee to deduct an amount for the percentage fee, that amount too must be returned to the debtor if no plan is confirmed.

---

[23] The most common administrative expense in a Chapter 13 case is the debtor's attorney fee. *See* Chapter 13 Practice & Procedure § 6:6. Other possible expenses include an ad hoc trustee's fee; administrative expenses arising from conversion from another chapter; costs resulting from the debtor's failure to make adequate protection payments or payments on a lease; and the expenses of operating the debtor's business. *See id.*; 11 U.S.C. § 503(b).

C.  If no plan is confirmed, Section 586(e) does not authorize the standing trustee to keep the percentage fee from the amounts he "collects."

The Trustees urge that, notwithstanding the text of Section 1326, the trustee may deduct the percentage fee from the debtor's pre-confirmation payments by virtue of 28 U.S.C. § 586. Section 586(e)(2) directs that the standing trustee "shall collect [the] percentage fee from all payments received by [the trustee] under plans in [Chapter 11 (Subchapter V), Chapter 12, and Chapter 13 cases] for which [he] serves as standing trustee." According to the Trustees, Section 586(e)(2) authorizes them to collect and *keep* the percentage fee, rather than to collect and *hold* it subject to some future event. Considering the statutory scheme as a whole, we conclude that the verb "collect," as used in Section 586(e)(2), is ambiguous. Its use in Section 586(e)(2) does not alter our reading of the plain language of Section 1326(a)(2), nor our conclusion that the fee must be returned absent plan confirmation.

The dictionary definition of "collect," in the context of financial transactions, is "to gather [assets or funds]," or "to obtain payment." *See* Collect, Black's Law Dictionary 328 (4th ed. 1968) ("To gather together; to bring scattered things (assets, accounts, articles of property) into one mass or fund; to assemble. To collect a debt or claim is to obtain payment or liquidation of it[.]"); Collect, The American Heritage Dictionary 261 (William Morris, ed., 1976) ("To bring together in a group; gather; assemble . . . . To call for and obtain payment of: collect taxes . . . . To take in payments or donations."); Collect, West's Legal Thesaurus/Dictionary 148 (West Pub. Co. 1986) ("To bring scattered things into one mass (the assets were collected) . . . . To obtain payment (the creditor came to collect on the debt)."); Collect, Webster's Third New International Dictionary (Philip Babcock Gove, ed., 1986) ("[T]o receive, gather, or exact from a number of persons or other sources . . . ."). In *Vincent v. The Money Store*, we interpreted "collect" in the context of the Fair Debt Collection Practices Act and

33

concluded based on similar dictionary definitions that it means "'to gather (contributions of money, or money due, as taxes, etc.) from a number of people.'" 736 F.3d 88, 100 (2d Cir. 2013) (quoting 1 The Compact Edition of the Oxford English Dictionary 465 (1971)) (alteration adopted).

Applying these definitions here, we understand to "collect" a percentage fee under Section 586(e)(2) as meaning to "gather" or "receive" that fee. Without more context, however, it is unclear what rights or obligations, if any, a reasonable reader would understand the word "collect" to imply once the collected item has been gathered or received. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). One plausible reading of "collect," as advanced by the Trustees, is that the collector, once having gathered or received, would be entitled to *keep* the fee. An equally plausible reading, however, is that the collector, having gathered or received, would then *hold* the designated sum, pending any number of further developments.

Section 586 is thus amenable to at least two plausible readings: to gather and keep, or to gather and hold depending on a future event. Both require us to "read an absent word"—"keep" or "hold"—"into the statute." *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004*); see also Matter of Evans*, 69 F.4th at 1106. We decline to do so. Instead, we conclude that the word collect as used in Section 586 is ambiguous.[24]

---

[24] Its ambiguity is demonstrated by the varying interpretations of the term that have been adopted by federal courts. *See, e.g., In re Acevedo*, 497 B.R. at 122 (describing different possible constructions of Section 586(e)(2) and concluding that the statute "requires the Trustee to collect and hold the percentage fees pending plan confirmation"); *In re Miranda*, 2001 WL 1538003, at *2 (B.A.P. 10th Cir. 2001) (concluding that Section 586(e)(2) "specifies the amounts upon which the percentage fee shall be computed, but it is silent with regard to . . . what effect pre-confirmation dismissal or conversion may have on the standing trustee's entitlement to her percentage fee"); *In re Harmon*, No. 1:19-BK-01424-TLM, 2021 WL 3087744, at *8 (B.A.P. 9th Cir. July 20, 2021) (holding that the "plain meaning of 'shall collect such percentage fee'" in Section 586(e)(2) is

This ambiguity tends to confirm the proposition that, in enacting Section 586(e)(2), Congress likely did not intend to resolve the question posed in this case: how standing trustees should handle pre-confirmation payments if the plan is not confirmed. In 1978, when Congress enacted Section 586(e)(2)'s predecessor, Chapter 13 did not require debtors to make any pre-confirmation payments at all—Congress had not passed the law that would become Section 1326(a).[25] So it seems to us unlikely that Congress intended the general directive to the trustee in Section 586—that he "shall collect [the] percentage fee"—to preemptively reject any future procedures adopted for pre-confirmation payments.

Congress later amended Section 586(e)(2), expanding it first in 1986 to apply to Chapter 12 standing trustees, and again in 2019 to cover Chapter 11 (Subchapter V) standing trustees as well.[26] Each of those chapters contains specific provisions setting

that "a standing trustee obtains the fee upon receipt of each plan payment"). It seems fair to expect that if there were no ambiguity, greater uniformity would prevail.

[25] *See* Pub. L. No. 95-598, §§ 586(e)(2), 1302(e)(2), 92 Stat. 2549, 2646, 2664 (1978) ("[The standing trustee] shall collect such percentage fee from all payments under plans in the [Chapter 13 cases] for which such individual serves as standing trustee.") For ease of reading, we place citations to the relevant public laws in this section and the next one in footnotes.

[26] *See* Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, § 113(c), 100 Stat. 3088, 3093; Small Business Reorganization Act of 2019, Pub. L. No. 116-54, § 4(b)(1)(D)(ii), 133 Stat. 1079, 1086.

In 1986, when Congress amended Section 586(e)(2) to apply to Chapter 12 trustees, it also revised the provision to read: "[The standing trustee] shall collect such percentage fee from all payments *received by [the trustee]* under plans . . . . " Pub. L. No. 99-554, § 113(c), 100 Stat. at 3093. The Trustees maintain that Congress's choice to replace "payments under plans" with "payments received by [the trustee] under plans" indicates that Congress wanted the standing trustee to collect the percentage fee upon *receipt* of the payment (whether before or after confirmation) and to keep that fee if the plan was not confirmed. The Trustees cite no legislative history to support this interpretation, however, and we do not think the text of the provision itself warrants such an expansive reading.

35

forth procedures for handling the debtor's pre- and post-confirmation payments. *See* 11 U.S.C. §§ 1194; 1226, 1326. Those specific provisions, not Section 586, serve as the better guide. *See Cmty. Health Care Ass'n of New York v. Shah*, 770 F.3d 129, 157 (2d Cir. 2014) ("It is a basic principle of statutory construction that a specific statute controls over a general provision." (alteration adopted; internal quotation marks omitted)).

We therefore conclude that Section 586(e)(2) was intended to set forth, in general terms, the source of the standing trustee's compensation. It simply does not direct when the percentage fee should be collected, what should happen after the fee is collected, or whether the fee must be returned if the plan is not confirmed. And it does not alter our interpretation of the text of Section 1326(a)(2), which in our view requires that the percentage fee be returned to the debtor.

*             *             *

Accordingly, reading Section 586 and Section 1326 together, we hold that the statutes require the following procedures: In the pre-confirmation period, the debtor must propose a plan and begin making payments under the plan, including in those payments an amount sufficient to cover the standing trustee's percentage fee. 11 U.S.C.

---

If Congress had any particular purpose when it added the phrase "received by [the trustee]," it seems more likely that it intended to clarify that the percentage fee is collected only from payments the trustee *received*—i.e., payments that the trustee distributed to creditors on behalf of the debtor, but not amounts the debtor paid directly to creditors. Before this amendment, lower courts were split as to "whether the percentage fee [was] to be applied to certain payments made by debtors directly to creditors or other parties rather than through the trustee, sometimes called payments 'outside the plan.'" 8 Collier ¶ 1302.05[c] (describing divide in courts before 1986). After the 1986 enactment, "most courts have permitted debtors to pay some creditors directly without paying the trustee a percentage fee on those payments." *Id.*; *see, e.g.*, *In re Wagner*, 36 F.3d 723, 728 (8th Cir. 1994) (describing the legislative history and holding that Section 586(e)(2) "means what it says and requires trustee's fees only on those payments 'received by' the trustee").

§ 1326(a)(1). The standing trustee may "collect" the percentage fee, 28 U.S.C. § 582(e)(2), along with the rest of the pre-confirmation payments, but he must "retain[]" (i.e., hold) both the percentage fee and creditor payments until plan "confirmation or denial of confirmation[,]" 11 U.S.C. § 1326(a)(2). If the plan is confirmed, the standing trustee will distribute the payments "as soon as is practicable" to creditors in accordance with the plan. *Id.* He will be paid the percentage fee "before or at the time" of those disbursements. *Id.* § 1326(b). If the plan is not confirmed, however, the standing trustee must "return" all pre-confirmation payments to the debtor, excluding only those amounts specifically exempted by the statute (i.e., amounts "previously paid" or "due and owing" to creditors, and Section 503(b) administrative expenses). *Id.* § 1326(a)(2). Because his percentage fee is not specifically exempted, he must also return the portion of the payments that might have covered his fee if the plan had been confirmed. He may not keep the fee or deposit it into the U.S. Trustee System Fund.

II.     **A textual comparison to parallel provisions for Chapter 12 and Chapter 11 (Subchapter V) bankruptcies confirms our interpretation.**

Further support for our conclusion is found when we consider how Congress has addressed the analogous fee question for standing trustees in bankruptcies under Chapter 12 and Chapter 11 (Subchapter V) ("Chapter 11(V)").

A. <u>The parallel provisions in Chapter 12 and Chapter 11(V)</u>

Chapter 12 (created in 1986) and Chapter 11(V) (created in 2019) set out bankruptcy procedures designed for family farmers and small business owners, respectively. Both chapters were added to the bankruptcy code after Chapter 13 was enacted, and they both borrow from Chapter 13. *Compare* 11 U.S.C. §§ 1321–30 (procedures for Chapter 13 plans) *with id.* §§ 1221–32 (same for Chapter 12); *and id.* §§ 1189–95 (same for Chapter 11(V)). Under all three chapters, a "standing trustee" in a region supervised by a U.S. Trustee administers most cases and "collect[s]" a

percentage fee from "all payments received by [the trustee] under plans" for which he serves as trustee. 28 U.S.C. § 586(e)(2). Each chapter also contemplates pre-confirmation payments to the standing trustee, *see* 11 U.S.C. §§ 1326, 1226, 1194—although under Chapter 13 those payments are mandatory (unless the court orders otherwise), *id.* § 1326(a), while under Chapter 12 and Chapter 11(V) pre-confirmation payments are not required, *id.* §§ 1226, 1194. Finally, each chapter includes a provision directing the trustee (1) to "retain[]" pre-confirmation payments "until confirmation or denial of confirmation" of a plan; (2) "if a plan is confirmed," to "distribute any such payment in accordance with the plan"; and (3) "[i]f a plan is not confirmed," to "return any such payments" to the debtor. *Id.* §§ 1326(a)(2), 1226(a), 1194(a).

Chapter 12's and Chapter 11(V)'s pre-confirmation procedures differ from Chapter 13's in a critical way, however: Chapter 12 and 11(V) *expressly authorize* the standing trustee to deduct his percentage fee before returning payments to the debtor if a plan is not confirmed. The Chapter 12 provision governing pre-confirmation payments states:

> Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor, after deducting—
>
> > (1) any unpaid claim allowed under section 503(b) of this title; and
> >
> > *(2) if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee.*

11 U.S.C. § 1226(a) (emphasis added). The parallel provision in Chapter 11(V) reads:

> Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor after deducting—

(1) any unpaid claim allowed under section 503(b) of this title;

(2) any payment made for the purpose of providing adequate protection of an interest in property due to the holder of a secured claim; and

*(3) any fee owing to the trustee.*

11 U.S.C. § 1194(a) (emphasis added).

That Congress included an explicit command to deduct the trustee's fee in Sections 1226(a) and 1194(a) and did not repeat that command in the parallel provision in Section 1326(a)(2) suggests that Congress likely intended something different in Chapter 13 proceedings.

B.  <u>The legislative histories of Sections 1326, 1226, and 1194 are consistent with this reading.</u>

The Trustees argue that the relevant legislative history undermines any attempt to draw meaning from the comparison of Sections 1226(a) and Section 1194(a) with Section 1326(a)(2) that we have just set out. They urge that, because the three provisions were enacted at different times and for different purposes, any differences in their texts do not bear on Congress's intentions.

True, "[t]he Supreme Court has cautioned against finding 'negative implications raised by disparate provisions' when 'the two relevant provisions were not considered or enacted together.'" *Pfizer, Inc v. United States Dep't of Health & Hum. Servs.*, 42 F.4th 67, 78 (2d Cir. 2022) (quoting *Gomez-Perez v. Potter*, 553 U.S. 474, 486 (2008)) (alteration adopted). We therefore scrutinize this legislative history closely before drawing inferences from the course of legislative events. But having done so, we find that the legislative history confirms that Congress was aware of and intended the differences among the three provisions. Those differences lend further support to our reading of Section 586 and Section 1326.

The pertinent legislative history is as follows.

In 1984, Congress enacted Chapter 13's Section 1326(a)(2). [27] It originally read in relevant part: "If a plan is not confirmed, the trustee shall return any [pre-confirmation] payments to the debtor, after deducting any unpaid claim allowed under [S]ection 503(b) of this title."[28]

Two years later, in 1986, Congress added Chapter 12 to the bankruptcy code.[29] Chapter 12 was "modeled on [C]hapter 13," and "many of [its] provisions are identical" to those found in Chapter 13. *Hall v. United States*, 566 U.S. 506, 516 (2012) (quoting 8 Collier ¶ 1200.01[5])); H.R. Conf. Rep. No. 99-958, at 48 (1986) ("This new chapter is closely modeled after existing Chapter 13."). But Congress did "alter[] those [Chapter 13] provisions that are inappropriate for family farmers," such as "the requirement that plan payments start within 30 days of the plan confirmation[.]" *Id*. Most critically here, Chapter 12's new Section 1226(a) used verbatim much of the language of the then-effective Section 1326(a)(2). The main exception was that, in Chapter 12 cases, Congress allowed the standing trustee to "deduct . . . the percentage fee" before returning pre-confirmation payments to the debtor.[30] Chapter 12's Sections 1226(b) and (c), on the

---

[27] Pub. L. No. 98-353, § 318(a), 98 Stat. at 357.

[28] *Id*.

[29] Pub. L. No. 99-554, § 255, 100 Stat. at 3105.

[30] The complete text of Section 1226(a) is shown below. The language that differs from that used in Section 1326(a)(2) is underlined.

> Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor, after deducting—

other hand, were identical to the then-effective Sections 1326(b) and (c).[31] As part of the 1986 bill, Congress also amended Section 1326(b) to include a citation to Section 586(e)(2).[32] It nevertheless left Section 1326(a) untouched.

Over the next two decades, Congress made several amendments to the text of Section 1326(a)(2). In 1994, it clarified that if a plan was confirmed, payments should be distributed "as soon as practicable."[33] In 2005, as discussed above, it added the phrase "not previously paid and not yet due and owing to creditors pursuant to paragraph

_____

(1) any unpaid claim allowed under section 503(b) of this title; and

(2) if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee.

Pub. L. No. 99-554, § 366, 100 Stat. at 3111.

The Trustees emphasize that "[t]he first sentence of [Section 1226(a)] provides that '*payments and funds* received by the [Chapter 12] trustee shall be retained,'" while Section 1326(a)(2) provides that "[a] payment made under [Section 1326(a)] shall be retained." Macco Br. at 19 (emphasis added); *see also* U.S. Trustee Br. at 28. Therefore, they say, the two sections must involve different sources of money: Section 1226(a) applies to pre-confirmation "[p]ayments and funds," while Section 1326(a)(2) applies to pre-confirmation payments under Section 1326(a), that is, "payments . . . proposed by the plan." They further posit that this difference explains why Congress might have seen a need to explicitly allow for the deduction of the trustee's percentage fee in Section 1226(a), but not in Section 1326(a)(2). We disagree. The difference in Section 1226(a)'s opening clause ("payments and funds") more plausibly reflects that because Section 1226 does not require a debtor to make any pre-confirmation payments at all, the debtor has more flexibility about those payments or funds he gives to the trustee before confirmation. But the rest of Section 1226(a) is copied almost verbatim from Section 1326(a)(2), and it makes clear that the term "payments" generally includes both Section 503(b) administrative fees and the trustee's percentage fee.

[31] *See* Pub. L. No. 99-554, § 255, 100 Stat. at 3112 (Section 1226(b)–(c)); Pub. L. No. 95-598, § 1326(a)–(b), 92 Stat. 2549, 2657 (parallel provisions in Section 1326, which were in 1984 moved to Section 1326(b)–(c)).

[32] Pub. L. No. 99-554, § 230, 100 Stat. at 3103.

[33] Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 307, 108 Stat. 4106, 4135.

(3)," effectively adding a second exception to the rule that pre-confirmation payments must be returned to the debtor.[34]

Finally, in 2019, Congress created Chapter 11(V) for small business owners, also borrowing in part from the existing Chapters 12 and 13.[35] The Chapter 11(V) provision governing pre-confirmation payments, like that in Chapter 12, copies much of the text of Chapter 13 but explicitly permits the trustee to deduct his percentage fee before returning payments to the debtor. *See* 11 U.S.C. § 1194(a). Congress also allowed the deduction of pre-confirmation adequate protection payments "due" to certain secured creditors, *id.* § 1194(a)(2), similar to the provision in Chapter 13 exempting "adequate protection" payments that were "already paid" or "due and owing" to creditors, *id.* §§ 1326(a)(1)(C), (a)(2).

Thus, the legislative history reveals that while Sections 1326, 1226, and 1194 were each enacted in different years, they are closely related. Congress modeled Section 1226(a) and Section 1194(a) on the pre-existing Section 1326(a)(2), and the three provisions are nearly identical. If Congress believed that the text of Section 1326(a)(2) already allowed the deduction of the standing trustee's percentage fee, it could have copied that exact language into Section 1226(a) and Section 1194(a). Instead, it chose to add a provision to each section explicitly allowing for the deduction of the trustee's fee. Under the Trustees' reading, those additions would have been entirely unnecessary.

Moreover, if Congress wished to allow standing trustees to deduct the percentage fee before returning Chapter 13 pre-confirmation payments, it has missed many opportunities to amend Section 1326(a)(2) to make that intent clear. In 1986, for

---

[34] Pub. L. No. 109-8, § 309(c)(2), 119 Stat. at 83.

[35] *See* Pub. L. No. 116-54, § 2(a), 133 Stat. at 1079.

instance, Congress simultaneously (1) copied much of the text of Section 1326(a)(2) into Section 1226(a), adding the express provision allowing the deduction of the percentage fee; (2) amended Section 1326(b); and (3) left Section 1326(a)(2) unaltered. This inaction, too, tends to confirm that Congress intended the differences between Section 1326(a)(2) and Section 1226(a) to carry meaning. And, since that 1986 amendment, Congress has repeatedly updated Section 1326(a)(2) but has never added an explicit provision allowing the standing trustee to deduct his percentage fee from the payments that must be returned to debtors when a Chapter 13 plan is not confirmed.

Under these circumstances, we conclude that Congress's choice to omit that language from Section 1326(a)(2) was intentional, and that the standing trustee must return all sums collected. No percentage fee may be retained.[36]

### III.    Barring the trustee from retaining a fee when a plan is not confirmed is consistent with the policy goals underlying Chapter 13.

Finally, the "legislative purpose as revealed by the history" of Chapter 13 also supports our conclusions regarding relevant statutory provisions. *Concrete Pipe & Prods. of Cal.*, 508 U.S. at 627.

From all we can see, pre-confirmation payments in Chapter 13 cases were never intended to serve as a source of added compensation for the standing trustees. Instead, the early payments were designed to "provide a good test of whether the debtor

---

[36] The Trustees also point out that Chapters 13, 12, and 11(V) were "created for different purposes, and they operate differently in significant ways." U.S. Trustee's Br. at 27. For instance, while pre-confirmation payments are mandatory in Chapter 13 cases, 11 U.S.C. § 1326(a)(1), they are not in Chapter 12 or Chapter 11(V) cases, *see* §§ 1201–32; 1181–95. If anything, however, the differences among the chapters tend to explain why Congress might have created different rules for the standing trustee's fee in different categories of proceedings. For instance, because pre-confirmation payments are voluntary in Chapter 12 and Chapter 11(V) bankruptcies, Congress may have concluded that it was reasonable to require debtors who elected to make such payments to pay the trustee's fee for administering them.

w[ould] be able to carry out the plan." S. Rep. No. 98-65, at 63 (1983). While the bankruptcy code did not require pre-confirmation payments before 1984, some districts had established local rules requiring them or something similar. *Id.* Thus, in the lead-up to Congress's enactment of the 1984 bankruptcy reform bill, Chapter 13 trustees reported to Congress that:

> [W]here payments commence near the time the plan is filed[,] there is a much greater incidence of compliance with the plan . . . . If payments are delayed until confirmation, the debtor may become accustomed to a level of expenditures which is difficult to reduce . . . . Where commencement of payment is delayed until confirmation of the plan, debtors frequently default, or must bear the time and expense of a separate proceeding to modify the plan.

*Id.*

With the 1984 reform, Congress set the months between the plan's filing and its confirmation as a test period, in which the debtor had to prove that she could make the required payments. Critically, however, and consistent with the notion of a test period, Congress made the payments reversible, directing the trustee to return the payments to the debtor if the plan proved unworkable. 11 U.S.C. § 1362(a)(2). In doing so, Congress struck a careful balance between two competing goals: its desire to ensure that debtors filing for Chapter 13 bankruptcy had a realistic chance of completing payments and securing a discharge of their debts, on the one hand, and the need to avoid imposing large costs on those debtors who proved unable to make payments, on the other.

The Trustees cite two main reasons for their view that requiring the standing trustee to return his percentage fee if no plan is confirmed is contrary to Congress's policy goals. First, they say that the standing trustee should be compensated by the debtor for the work that he must perform in the pre-confirmation period, and if the fee is returnable, he is simply left unpaid. Second, they suggest that allowing the debtor to

avoid paying the percentage fee will encourage bad faith Chapter 13 filings by people seeking only to delay foreclosure or other efforts at collection.

As to the first point—the need to compensate the standing trustee for the work he performs—the Trustees' argument is at odds with the compensation structure that Section 586 creates. The percentage fee system does not compensate standing trustees based on the time devoted to or any other aspect of the quality or quantity of work done on a particular Chapter 13 case. Rather, the amount of the percentage fee that the trustee is authorized to "collect" turns simply on the amount of a debtor's actual payments to creditors. Thus, the trustee will receive less from a debtor making low monthly payments than from one making high monthly payments, whatever the distribution of the related workloads.

It is in the nature of this system that certain cases—those in which a debtor completes all payments and the payment amounts are large—will provide more support to the trustee and the trustee system than will other cases. And, in turn, the cost of administering the trustee system is also subsidized by bankruptcy cases under Chapters 7 and Chapter 11, which tend to involve larger estates than does Chapter 13. *See Siegel*, 596 U.S. at 469 (explaining that the "bulk of" user fees paid into the U.S. Trustee System Fund, in fact, are "paid by debtors who file cases under Chapter 11 of the Bankruptcy Code"). But Congress did not create a fee-for-service system for standing trustees, as it did for ad hoc trustees. *See* 11 U.S.C. § 330(a)(1). Instead, the percentage fee protocol ensures that the standing trustee receives reasonable compensation in any given year from *all* of the many cases that he administers, not from any single case. Nor can we say this system is unfair to debtors who secure confirmation of a plan and complete all payments: while those debtors will pay a larger fee, they also benefit most from Chapter 13.

Second, as to the Trustees' argument that bad faith debtors will be encouraged by the absence of the percentage fee, Congress has designed other solutions to this problem. Notably, the requirement that the debtor make pre-confirmation payments, in and of itself, deters bad faith filings. In Soussis's case, for instance, several of her earlier bankruptcy cases were dismissed within months of filing after the trustee informed the court that she failed to make the payments proposed by her plan. And Congress has devised other ways to discourage bad faith filings, including by allowing courts to dismiss bankruptcy cases or deny confirmation based on evidence of bad faith, 11 U.S.C. §§ 1325(a)(3), 1307, or to deny return of the debtor's property post-dismissal "for cause," *id.* § 349(b)(3). In its 2005 bankruptcy reform legislation, Congress attempted to address the problem of repeat bankruptcy filers like Soussis. *See* Pub. L. No. 109-8, § 302(3), 119 Stat. at 75 (codified at 11 U.S.C. § 362(c)(3)) (providing that if a Chapter 13 debtor files a new case within one year after the prior case was dismissed, the automatic stay will end after 30 days, unless the court extends the stay). But any effort to further deter bad faith filings also risks making good faith filings more difficult. Moreover, percentage fees imposed on debtors in improper circumstances have the added downside of reducing the pool of money available to reimburse creditors.

Congress, not the courts, strikes the balance between competing policy priorities. In this case, Congress has done so by requiring the trustee to collect pre-confirmation payments and directing the trustee to return those payments to the debtor—without deducting a percentage fee—if the plan is not confirmed. Reasonable minds may disagree about the wisdom of Congress's choices as a matter of public policy. We are bound to apply the structure Congress has created as we understand it.

## CONCLUSION

For these reasons, we hold that if a Chapter 13 plan is not confirmed, the trustee must return to the debtor all of the sums collected, including the percentage fee, subject

only to limitations set out in Section 1326(a)(2). This interpretation best harmonizes the texts of Section 1326 and Section 586; it best explains the differences between Section 1326 and the parallel provisions for Chapter 12 and Chapter 11(V) bankruptcies; and it best comports with the trustee compensation framework, as reflected in the statutory language and history of the relevant statutes. Accordingly, we **REVERSE** the judgment of the District Court and **REMAND** the case with instructions to the District Court to enter judgment granting Soussis's disgorgement motion.